Nos. 94-517 and 95-212

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

THE STATE OF MONTANA,
      Plaintiff and Respondent,

   -v-

DAVID E. NELSON,
      Defendant and Appellant,

THE STATE OF MONTANA,
      Plaintiff and Respondent,

   -v-

CHARLES LAFLEY, RON WORDEN and
JESSE EDWARDS,
      Defendants and Appellants.

FILED

JAN 30 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Third Judicial District,
                In and for the County of Powell,
No. 94-517     The Honorable Ted L. Mizner, Judge presiding.

                District Court of the Third Judicial District,
                In and for the County of Powell,
No. 95-212     The Honorable James E. Purcell, Judge presiding

COUNSEL OF RECORD:

      For Appellants:

          William F. Hooks, State Appellant Defender, Helena,
          Montana (argued)

      For Respondent:

          Joseph P. Mazurek, Attorney General, Brenda Nordlund
          Assistant Attorney General, Helena, Montana
          (argued); Christopher G. Miller, Powell County
          Attorney, Deer Lodge, Montana; Brant Light, Cascade
          County Attorney, Great Falls, Montana

                       Heard: January 9, 1996
                 Submitted: January 11, 1996

                   Decided: January 30, 1996

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Claiming violation of the Double Jeopardy Clauses of the Montana and United States Constitutions, David Nelson (Nelson) and Charles Lafley, Ronald Worden and Jesse Edwards (Lafley, Worden and Edwards) appeal the denial by the Third Judicial District Court, Powell county, of their respective motions to dismiss the informations filed against them and from their convictions for escape. Lafley, Worden and Edwards also appeal from their convictions of the added charge of unauthorized use of a motor vehicle. We affirm their respective convictions.

Additionally, Lafley, Worden and Edwards appeal the District Court's sentences for felony escape under the provisions of § 45-7-306(3)(b)(i), MCA (1993). We reverse and remand for resentencing for misdemeanor escape under § 45-7-306(3)(c), MCA (1993).

Nelson's case and the case involving Lafley, Worden and Edwards have been consolidated for purposes of this appeal. Where appropriate, we refer to Nelson, Lafley, Worden and Edwards, collectively, as Appellants.

We address the following issues on appeal:

1. Does the Double Jeopardy Clause of the federal or state constitution bar criminal prosecution for escape when an inmate defendant has already been subjected to forfeiture of good time credits in a prison disciplinary proceeding arising from the same incident?

2. Did the District Court properly sentence Lafley, Worden and Edwards pursuant to the felony escape provisions of § 45-7-306(3)(b)(i), MCA (1993), under the facts of this case?

BACKGROUND

Nelson, an inmate subject to official detention at the

2

Montana State Prison (MSP) walked away from his temporary assignment at the Great Falls Pre-Release Center in October 1992. Following his apprehension in Billings in March 1994, Nelson was returned to MSP and, following prison disciplinary proceedings, suffered the forfeiture of 4 years, 11 months and 6 days accumulated good time and was placed in maximum security. Additionally, for that same incident, Nelson was charged with the offense of escape in violation of § 45-7-306, MCA (1991).

Following his conviction of that charge by entry of an Alford plea, Nelson was sentenced to three years imprisonment to run consecutively with his existing sentence. Prior to entry of his plea, Nelson moved to dismiss the criminal information filed against him on the basis that he had already been punished by the State for his escape through the MSP disciplinary proceedings and that subjecting him to additional punishment for the criminal charge of escape for the same incident violated the Double Jeopardy Clauses of the Montana and United States Constitutions. Nelson's motion to dismiss was denied by the District Court.

Lafley, Worden and Edwards were also inmates subject to official detention at the MSP. On April 11, 1994, the three were on daily work assignment at the Deer Lodge golf course and were directed to perform routine maintenance and groundskeeping. Because of their classification status as "trustees," they were subject to "minimal, non-direct supervision" by a civilian employee of the golf course independent of the prison staff. They were at no time physically restrained with shackles, chains, etc.

3

Shortly after being given their work assignments, the three began drinking and became intoxicated. Around noon, they ran out of liquor, took the golf course-owned Ford Ranchero and departed for Helena to purchase more alcohol. They were observed by their civilian supervisor as he was returning to the golf course. He gave pursuit and reported their unauthorized departure to law enforcement authorities. The three were subsequently apprehended outside of Helena later that same afternoon.

As a result of their escapade, Lafley, Worden and Edwards each suffered disciplinary sanctions through the Department of Corrections institutional disciplinary committee for major rules violations including escape, theft and substance abuse. Lafley forfeited 7 years, 10 months, 3 days accumulated good time credits; Worden lost 7 years, 1 month, 29 days good time credits; and Edwards forfeited 1 year, 8 months, 7 days good time credits. Each man's security classification was increased and each was referred to the Powell County Attorney for criminal prosecution.

The hearings officer justified the administrative sanctions on the basis that the conduct of the three inmates posed a serious threat to the institution and to society and violated state law. The warden, on denial of their administrative appeal, referred to the whole incident as being a serious violation of prison rules and the escape as being a very serious rule violation.

On April 14, 1994, the same date as the disciplinary proceedings, criminal informations were filed against Lafley, Worden and Edwards charging each with escape and felony theft (the

4

latter charge being subsequently amended to unauthorized use of a motor vehicle, a misdemeanor, in violation of § 45-6-308, MCA.) Pretrial, each man moved to dismiss the criminal charges with prejudice on double jeopardy grounds, and after hearing and argument, the District Court denied these motions. The cases were consolidated for trial; the motions to dismiss were renewed and denied after the jury was sworn; and on November 1, 1994, each defendant was convicted by the jury of escape and unauthorized use of a motor vehicle.

In December 1994, Lafley, Worden and Edwards were each sentenced to three years in MSP for felony escape and six months in the Powell County jail for the unauthorized use of a motor vehicle. Those sentences were ordered to run concurrently but consecutively with each man's existing sentence.

DISCUSSION

1.

Does the Double Jeopardy Clause of the federal or state constitution bar criminal prosecution for escape when an inmate defendant has already been subjected to forfeiture of good time credits in a prison disciplinary proceeding arising from the same incident?

This issue, while one of first impression in Montana, has been addressed in numerous other jurisdictions. The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. United States v. Halper (1989), 490 U.S. 435, 440, 109

5

S.Ct. 1892, 1897, 104 L.Ed.2d 487, 496 (citing North Carolina v. Pearce (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664-65); see also, State v. Lindseth (1983), 203 Mont. 115, 659 P.2d 844. This clause has been made applicable to the states through the Fourteenth Amendment. Benton v. Maryland (1969), 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707; State v. Cole (1987), 226 Mont. 377, 744 P.2d 526.

For purposes of this case, Appellants claim no greater protection from double jeopardy under the Montana Constitution, Article II, Section 25, than under the Fifth Amendment of the United States Constitution. Accordingly, we treat the protections from double jeopardy afforded under both our state and the federal constitutions as co-extensive and will simply refer to both clauses collectively in the singular.

Here, it is the multiple punishments prohibition of the Double Jeopardy Clause which is implicated. Neither party disputes that Appellants' loss of good time and increase in security classification arose from the same incident and conduct which resulted in their criminal convictions and sentences for escape, and, in the case of Lafley, Worden and Edwards, for the additional conviction of unauthorized use of a motor vehicle. While the focus of Appellants' argument is not on the increase in their security classifications, they do nevertheless contend that, having suffered the administrative forfeiture of their accumulated good time credits, their criminal convictions and sentences constitute multiple punishments for the same offense in violation of the

6

Double Jeopardy Clause.  We disagree.

Historically, the protection from double jeopardy was thought to arise only in the context of criminal cases.  See, e.g., Helvering v. Mitchell (1938), 303 U.S. 391, 58 S.Ct.630, 82 L.Ed 917; United States ex rel. Marcus v. Hess (1943), 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443; Rex Trailer Co. v. United States (1956), 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed 149.  The U.S. Supreme Court disabused this notion, however, in Halper, wherein the Court held that a civil penalty is "punishment" for double jeopardy purposes if it "cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes." Halper, 490 U.S. at 448.  See also, Austin v. United States (1993), ___ U.S. ___, 113 S.Ct. 2801, 2806, 2810, n. 12, 125 L.Ed.2d 488, 503, 505, an Eighth Amendment, Excessive Fines Clause case and Department of Revenue of Montana v. Kurth Ranch (1994), __ U.S. ___, 114 S.Ct. 1937, 1944-45, 128 L.Ed.2d 767, 778, a Fifth Amendment case, both of which cited Halper with approval for this same proposition.  As the Court stated in Kurth, citing Halper, "[a] defendant convicted and punished for an offense may not have a nonremedial civil penalty imposed against him for the same offense in a separate proceeding." Kurth, 114 S.Ct. at 1945.

Notwithstanding Halper and its progeny, however, courts in both state and federal jurisdictions have uniformly rejected its application and rationale in the context of prison disciplinary proceedings.  Typically, both state and federal jurisdictions have

7

held that prison disciplinary proceedings are remedial in nature and present no impediment to subsequent criminal proceedings involving the same conduct. See, e.g., United States v. Brown (9th Cir. 1995), 59 F.3d 102, 104-05 (loss of good time; transfer to a higher security institution); United States v. Hernandez-Fundora (2d Cir. 1995), 58 F.3d 802, 807 (disciplinary segregation); State v. Lynch (Neb. 1995), 533 N.W.2d 805, 911 (loss of good time and disciplinary segregation); Garrity v. Fiedler (7th Cir. 1994), 41 F.3d 1150, 1153, cert. denied (1995), 115 S.Ct. 1420, 131 L.Ed.2d 383 (segregation and extension of mandatory release date); People v. Watson (Colo.Ct.App. 1994), 892 P.2d 388, 390 (loss of good time, transfer and segregation); Wild v. Commonwealth. (Va.Ct.App. 1994), 446 S.E.2d 626, 627 (isolation and loss of good time); State v. Walker (Conn.App.Ct. 1994), 646 A.2d 209, 212 (punitive segregation and confinement to quarters); United States v. Newby (3d Cir. 1993), 11 F.3d 1143, 1145-46, cert. denied (1994), 114 S.Ct. 1841, 128 L.Ed.2d 468 (loss of good time, transfer and segregation); State v. Fonder (Wis.Ct.App. 1991), 469 N.W.2d 922, 925 (segregation and extension of mandatory release date). As the court in Hernandez-Fundora stated:

> [T]he mere fact that a sanction imposed by prison officials has a punitive component does not mean that the sanction constitutes "punishment" for double jeopardy purposes.

Hernandez-Fundora, 58 F.3d at 806.

While candidly acknowledging this line of decisional authority, Appellants nevertheless contend that in Montana a different rule obtains. Appellants cite § 53-30-105, MCA (1993),

and argue, on the basis of the language of this statute, that in this State the forfeiture of an escapee's accumulated good time credits is expressly declared to be "punishment" and that prison disciplinary sanctions are punitive in nature and purpose. Further supporting this interpretation, Lafley, Worden and Edwards refer to the remarks of the hearings officer and warden in justification of the administrative sanctions imposed in their cases.

Section, 53-30-105, MCA (1993), in pertinent part, provides:

(2) In the event of an attempted escape by an inmate or a violation of the rules prescribed by the department or warden, the inmate may be *punished* by the forfeiture of part or all good time allowances. . . . *Any punishment* by forfeiture of good time allowance must be approved by the department. [Emphasis added.1

Appellants contend that this statute sets Montana prison disciplinary cases apart from the majority position; that because of the language of this statute, such proceedings constitute "punishment;" and that, as a result, the protections of the Double Jeopardy Clause are implicated.

We agree that if, in the prison setting, the state's remedial interest in maintaining order and security, preventing violent altercations among the criminal population, encouraging compliance with prison rules and regulations and providing a prompt mechanism for carrying out those goals, was to be the focus of § 53-30-105(2), MCA (1993), then the existing statutory language ill serves the expression of that purpose and intent. We note that the existing language chosen by the legislature pre-dates Halper. Additionally, we recognize that Halper emphasized that the labels affixed to the proceeding or relief imposed are neither controlling

9

nor of paramount importance. <u>Halper</u>, 490 U.S. at 447-48. <u>See also</u>, <u>Austin</u>, 113 S.Ct. at 2806; <u>Kurth</u>, 114 S.Ct. at 1945, n. 15. Nevertheless, we decline to read into § 53-30-105(2), MCA (1993), some broad remedial purpose that its plain language does not support. Section 1-2-101, MCA. If remediation is the intent of the legislature in forfeiting good time for escape, then the statute should be amended accordingly.

That does not end our analysis, however. Even under § 53-30-105(2), MCA (1993), as written, we conclude that the prohibition against double jeopardy does not bar criminal prosecution for conduct that has been the subject of prior administrative disciplinary proceedings at the prison. Rather, we hold that even if such administrative sanctions are deemed to be "punishment," they are integral parts of and indistinct from the inmate's single punishment of incarceration for his prior conviction.

At the outset, we note that the granting of good time credits is "conditioned upon the inmate's good behavior and compliance with the rules made by the department or warden." Section 53-30-105(1), MCA (1993). Moreover, while providing that forfeiture of good **time** is a "punishment," § 50-30-105(4), MCA (1993), allows previously forfeited good time to be restored as a result of subsequent good behavior. In other words, good time is a reward for good behavior and its accrual is conditioned upon the continuation of the inmate's good behavior. If that condition precedent is not fulfilled and the prisoner's good time is forfeited, his **term** of imprisonment is no different than what was pronounced in his

10

original sentence. Thus, the withholding of the contingent reward of good time cannot be "punishment" for double jeopardy purposes.

This rationale has been previously adopted in the Ninth Circuit. In United States v. Soto-Olivas (9th Cir. 1995), 44 F.3d 788, cert. denied (1995), 115 S.Ct. 2289, 132 L.Ed.2d 290, the court held that since the revocation of parole or probation is part of the original sentence, and since the continuation of parole or probation is conditioned on compliance with stated conditions, revocation of parole or probation is regarded as reinstatement of the sentence for the underlying crime and not punishment for the conduct leading to the revocation. See Soto-Olivas, 44 F.3d at 789, 791.

Similarly, in United States v. Brown (9th Cir. 1995), 59 F.3d 102, citing Soto-Olivas, the court reasoned that compliance with the conditions for awarding good time credit is one of the terms of the original sentence. "Withholding such credits, even if 'punitive,' does not alter the original sentence, it only means the prisoner must serve a larger part of that sentence in prison." Brown, 59 F.3d at 105.

The same result obtains here. Even if Appellants' good time is forfeited for punitive reasons, their original sentences are not extended. While they may be required to serve a larger portion of their original sentences in prison (assuming that their forfeited good time is not restored for subsequent good behavior), they are not being "punished" for double jeopardy purposes because the "punishment" to which they are subjected administratively is a

11

consequence of their underlying prior convictions that resulted in their incarceration and not as a result of the rule violations or escape attempt that led to the disciplinary action itself.

Accordingly, we hold that under § 53-30-105(2), MCA (1993), the multiple punishments prohibition of the Double Jeopardy Clause does not bar criminal prosecution for escape when an inmate defendant already has been subjected to forfeiture of all good time credits in prison disciplinary proceedings arising from the **same** incident.

2.

> Did the District Court properly sentence Lafley, Worden and Edwards pursuant to the felony escape provisions of § 45-7-306(3)(b)(i), MCA (1993), under the facts of this case?

Lafley, Worden and Edwards contend that, in light of the facts established at trial, the District Court could only have sentenced them for misdemeanor escape and that the imposition of a felony sentence in each of their cases was error. We agree.

Section 45-7-306(3), MCA (1993), provides:

> (3) A person convicted of the offense of escape shall be:
> (a) imprisoned in the state prison for a term not to exceed 20 years if he escapes from or while in transit to or from a state prison, county jail, city jail, community corrections facility or program, or supervised release program by the use or threat of force, physical violence, weapon, or simulated weapon;
> (b) imprisoned in the state prison for a **term** not to exceed 10 years if he:
> (i) has been charged with or convicted of a felony and escapes from or while in transit to or from a state prison, county jail, city jail, halfway house, life skills center, community corrections facility or program, or supervised release program; or
> (ii) escapes from or while in transit to or from another official detention by the use or threat of force,

12

physical violence, weapon, or simulated weapon; or
    (c) fined not to exceed $500 or imprisoned in the county jail for a term not to exceed 6 months, or both, if he commits escape, including escape while in transit to or from official detention, under circumstances other than (a) and (b) of this subsection.

Here, the evidence precludes application of either § 45-7-306(3)(a) or (b)(ii), MCA (1993), since the use or threat of force, physical violence, or weapons, real or simulated, was not involved in the three inmates' escape. Since the District Court sentenced each defendant for felony escape, necessarily the only other subsection of § 45-7-306(3), MCA (1993), available was (b)(i). Sentencing under that provision, however, requires that the person convicted escape "from or while in transit to or from" the various institutions and facilities listed.

The facts established at trial clearly indicate that Lafley's, Worden's and Edwards' escape occurred while they were on daily work assignment at the Deer Lodge golf course. At the time of the crime, they were not at any one of the institutions or facilities listed in the statute, nor were they "in transit" to or from one of those institutions or facilities.

Notwithstanding the clear and unambiguous language of the statute, the State nevertheless argues that we should not apply the statute literally, but should liberally construe the phrase "while in transit to or from" to describe "both the actual conveyance of inmates to and from the state prison at the beginning and end of each work day and the degree of custody to which they are subject while at work." To do otherwise, according to the State, will defy common sense and necessitate the legislature once again amending

13

the statute as it did in response to our prior narrow and literal interpretations of the statutory language at issue in State v. Whiteshield (1980), 185 Mont. 208, 605 P.2d 189 (rejecting the argument that escape from a furlough was the same as escape from the state prison); State v. Savaria (1990), 245 Mont. 224, 800 P.2d 696 (rejecting the argument that escape from the "county jail" encompassed defendant's escape from the courthouse following his appearance at a sentencing proceeding). See also, State v. Kyle (1980), 189 Mont. 38, 614 P.2d 1059, which prompted the legislature to amend the statute to codify our decision and include supervised release programs within the felony escape statute. We decline the State's invitation to insert into the statute that which has been omitted by the legislature. Section 1-2-101, MCA.

In the first place, the language which the legislature chose in defining felony escape under § 45-7-306(3)(b)(i), MCA (1993), is clear and unambiguous. We are simply not going to torture the phrase "in transit to or from" as the State suggests we should. Lafley, Worden and Edwards were not "in transit" to or from any state facility or institution when they escaped. They were at the Deer Lodge golf course.

Secondly, we do not assume, as the State apparently does, that the legislature would, in any event, consider an unrestrained inmate's escape from a civilian-supervised work assignment outside the walls of the institution to pose the same sort of serious risk of harm and violence that is inherent in a prisoner's escape from confinement and supervision by guards whose duty is to prevent

14

escapes. <u>See</u> <u>Whiteshield,</u> 605 P.2d at 190-91; <u>Kyle,</u> 614 P.2d at 1060. Certainly, if the legislature deems the sorts of escapes at issue here to pose a serious risk of harm, it can amend the statute to accommodate that concern.

Accordingly, we hold that the District Court improperly sentenced Lafley, Worden and Edwards pursuant to the felony escape provisions of § 45-7-306(3)(b)(i), MCA (1993), under the facts of this case. We remand for resentencing under the misdemeanor escape provisions of § 45-7-306(3)(c), MCA (1993).

Affirmed in part; reversed in part; and remanded for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

15

January 30, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

William F. Hooks
State Appellate Defender
P.O. Box 200145
Helena, MT 59620

Hon. Joseph P. Mazurek, Attorney General
Brenda Nordlund, Assistant
Justice Bldg.
Helena, MT 59620

Christopher G. Miller
Powell County Attorney
409 Missouri Ave.
Deer Lodge, MT 59122

Brant Light
Cascade County Attorney
Cascade County Courthouse
Great Falls, MT 59401

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _A. Galley_
Deputy